UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, <br><br> Plaintiff, <br><br> v. <br><br> BED BATH & BEYOND INC., <br><br> Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1. This is a stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the Exchange Act), 15 U.S.C. § 78n(a), and the rules and regulations of the United States Securities and Exchange Commission (the "SEC").

2. Plaintiff, a shareholder in Defendant Bed Bath & Beyond Inc. ("Bed Bath & Beyond"), seeks an injunction to prevent a vote by its shareholders on Management Proposal 5 in the 2017 Proxy Statement for the annual meeting of Bed Bath & Beyond shareholders scheduled for June 29, 2017 ("Proposal 5"). The grounds for this injunction are Defendant's failures to comply with the SEC's disclosure requirements for proxy statements.

3. Proposal 5 requests that the shareholders re-approve the performance goals of the Bed Bath & Beyond Inc. 2012 Incentive Compensation Plan (the "Plan"), which proposes to allow Bed Bath & Beyond to award 15,205,511 available shares to participants in the plan. But it

is unclear how many participants are in the plan and why they are receiving these awards. SEC Rule 14a-3(a), 17 C.F.R. § 240.14a-3, requires that public companies may not solicit shareholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A," 17 C.F.R. § 240.14a-101. Item 10(a)(1) of Schedule 14A specifically requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

4. Proposal 5 of the 2017 Proxy Statement fails to disclose the classes of eligible participants, their approximate number, and the basis of their participation in the Plan. Moreover, the 2017 Proxy Statement is false and misleading regarding the tax deductibility of the Plan pursuant to IRC § 162(m) and the regulations promulgated thereunder.

5. Thus, the 2017 Proxy Statement does not comply with the SEC rules and regulations, and the Court should enjoin that vote unless and until Defendant furnishes its shareholders with a supplemental proxy statement with those specific disclosures.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

7. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

8. Venue is proper in this district because, as allowed under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred because the

Plaintiff is a resident of this district.

## PARTIES

9. Plaintiff is, and has been continuously since June 11, 2014, a holder of Bed Bath & Beyond common stock.

10. Bed Bath & Beyond is a corporation organized under the laws of the State of New York. The Company's last fiscal year ended February 25, 2017. As of March 25, 2017, it had 145,153,735 shares of common stock outstanding. Bed Bath & Beyond's common stock is traded on the NASDAQ under the symbol BBBY. Bed Bath & Beyond is a global online travel company.

## WRONGFUL ACTS AND OMISSIONS

11. Bed Bath & Beyond has scheduled the annual shareholders' meeting for June 29, 2017. On May 31, 2017, it furnished its shareholders with the 2017 Proxy Statement to solicit their proxies for five management proposals and to transact other business that may properly come before the annual meeting.

12. Proposal 5 requests that the shareholders approve the Plan, which Bed Bath & Beyond will be able to use to grant non-qualified stock options, SARs, restricted shares, RSUs, cash awards, performance awards or any combination of to participants in the plan immediately after the stockholder vote. But this proposal fails to provide sufficient – and federally required – information for Bed Bath & Beyond stockholders to understand how many participants there are in the plan or why they are eligible for such shares.

13. Because Proposal 5 concerns a stockholder vote on a compensation plan, the SEC's rules and regulations require the 2017 Proxy Statement to disclose certain information concerning the Plan. Specifically, Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101

states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a) Plans subject to security holder action.
>
> (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

But the 2017 Proxy Statement omits these disclosures.

14. Instead of providing the "approximate number of persons in each such class, and … the basis of such participation," Proposal 5 only tells stockholders the following about who will receive these awards:

> Employees, consultants and prospective employees and consultants of the Company and its affiliates and non-employee directors of the Company are eligible to be granted non-qualified stock options, SARs, restricted stock awards, performance awards and other stock-based awards under the 2012 Plan. Only employees of the Company or its subsidiaries are eligible to be granted incentive stock options ("ISOs") under the 2012 Plan. Eligibility for awards under the 2012 Plan is determined by the applicable Committee in its sole discretion, provided that no award may be made to any non-employee director unless all similarly situated non-employee directors have the right to receive the same award on the same terms.

Proxy Statement at 48.

15. Nowhere in the 2017 Proxy Statement does Bed Bath & Beyond disclose the number of "[e]mployees, consultants and prospective employees and consultants of the Company and its affiliates and non-employee directors of the Company." Indeed, according to Article II of the Plan, which is annexed to the 2012 Proxy Statement, the definition of "Affiliate" is very broad:

"Affiliate" means each of the following: (a) any Subsidiary; (b) any Parent; (c) any corporation, trade or business (including, without limitation, a partnership or limited liability company) that is directly or indirectly controlled 50% or more (whether by ownership of stock, assets or an equivalent ownership interest or voting interest) by the Company or one of its Affiliates; (d) any corporation, trade or business (including, without limitation, a partnership or limited liability company) that directly or indirectly controls 50% or more (whether by ownership of stock, assets or an equivalent ownership interest or voting interest) of the Company; and (e) any other entity in which the Company or any of its Affiliates has a material equity interest and that is designated as an "Affiliate" by resolution of the Committee.

16. Thus, it is entirely unclear from the 2017 Proxy Statement how many participants will be awarded the compensation from the Plan that stockholders are being asked to approve or the basis of their receipt of such awards.

17. This contravention of the SEC rules renders the 2017 Proxy Statement unlawful under § 14(a) of the Exchange Act.

18. As stated above, the Plan allows for 15,205,511 authorized shares of Common Stock to be awarded immediately after the stockholder vote and to meet the requirements of "performance-based compensation" under Section 162(m) of the Internal Revenue Code.

19. The 2017 Proxy Statement represented to the stockholders that the Plan would be tax-deductible if the stockholders re-approved it. However, even with stockholder approval, the representation that the compensation paid pursuant to the Plan would be tax-deductible is materially false and misleading because the Plans fails to comply with 26 U.S.C. § 162(m) ("IRC § 162(m)") and its relevant regulations for allowance of deductibility.

20. IRC § 162(m) imposes a $1 million limit on the amount a publicly held corporation may deduct for compensation paid to Covered Employees. The same provision allows for an exception to this limit for compensation that qualifies as "performance-based" as

5

defined by the IRC § 162(m) and the regulations promulgated thereunder.

21. Whereas IRC § 162(a)(1) allows the public company to obtain, as an income tax deduction, "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, IRC § 162(m) imposes restrictions on that deduction for the compensation of the Company's Covered Employees. The Covered Employees, as defined in IRC § 162(m)(3), are the CEO and the highest compensated officers, excluding the CFO, unless the CFO also holds a position at the company that is one of the three most highly compensated executive officers of the company for the taxable year.

22. For compensation in excess of $1 million, in order for that compensation to qualify for the exception under § 162(m), the Plan must comply with the requirements of IRC § 162(m) and 26 C.F.R. § 1.162-27 ("Treas. Reg. § 1.162-27").

23. IRC § 162(m) provides that compensation paid to a public company's Covered Employees will be tax-deductible, but only up to $1 million, *unless* the compensation is paid solely for attaining one or more *objective* performance goals. To qualify for the deduction, the performance goals must: (i) be determined by a two-or-more member compensation committee of the board of directors; (ii) along with the applicable corporate officers' compensation package, be disclosed to, and approved by, a shareholder majority vote; and (iii) be confirmed by the compensation committee as being met before any compensation is paid. Treas. Reg. § 1.162-27(e)(v)(2).

24. Proposal 5 in the 2017 Proxy Statement states:

> The purpose of asking shareholders to re-approve the performance goals under the 2012 Plan is so that certain incentive awards granted thereunder may qualify as exempt performance-based compensation under Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code"). Section 162(m) of the Code generally disallows the corporate tax deduction for certain

> compensation paid in excess of $1,000,000 annually to each of the chief executive officer and the three other most highly paid executive officers (other than the chief financial officer) of publicly-held companies, unless compensation is performance-based or satisfies other conditions. To satisfy the performance-based exception, Section 162(m) of the Code generally requires such performance goals to be approved by shareholders every five years.
>
> * * *
>
> We are not proposing any amendment to the terms of the 2012 Plan at this time. These performance goals must be shareholder approved to preserve, to the extent possible, our tax deduction for certain awards made under the 2012 Plan in accordance with the terms of Section 162(m) of the Code and the related regulations.
>
> The Board recommends that shareholders re-approve the performance goals under the 2012 Plan. If the requisite shareholder approval of the performance goals is not obtained, we may continue to grant awards under the 2012 Plan in accordance with its current terms. However, certain awards under the Plan may not constitute "performance-based" compensation under Section 162(m) of the Code and accordingly, may not be tax deductible by the Company depending on the facts and circumstances.

Proxy at 48.

25. In addition to the disclosure requirements for stockholder approval under IRC § 162(m), SEC regulations, 17 C.F.R. § 240.14a-101 (Item 8(b)) requires that a proxy statement that solicits approval of a compensation plan for executive officers must include the information set forth in Item 402(b) of Regulation S-K, which governs what must be disclosed to shareholders about incentive and performance-based compensation plans.

26. As shown above, the 2017 Proxy Statement represented that under the Plan it was necessary for the stockholders to re-approve the material terms of the Plan for the executive officers' compensation to be tax deductible by the Company. But the 2017 Proxy Statement also represented that if stockholders fail to re-approve the performance goals, Bed Bath & Beyond

will continue to grant awards under the Plan anyway, even if the awards will not be tax-deductible. However, this statement renders the Plan to be non-compliant with 162(m), even if the requisite stockholder approval was obtained.

27. Under Treasury Regulation § 1.162-27(e)(4)(i), payments of incentive-based compensation made *regardless* of stockholder approval are not tax deductible. The regulation provides as follows:

> (i)General rule. The material terms of the performance goal under which the compensation is to be paid must be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid. ***The requirements of this paragraph (e)(4) are not satisfied if the compensation would be paid regardless of whether the material terms are approved by shareholders.*** The material terms include the employees eligible to receive compensation; a description of the business criteria on which the performance goal is based; and either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained (except that, in the case of a formula based, in whole or in part, on a percentage of salary or base pay, the maximum dollar amount of compensation that could be paid to the employee must be disclosed).

(Emphasis added). As held in *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003), "[t]he Board's threat undermines the deductibility of the bonus even if the shareholders approved it…..Regardless of the shareholders' approval, the bonus would not have been deductible under the Treasury Regulations, and the alleged false statement in the proxy statement is actionable." *Id.* at 381. Therefore, the 2017 Proxy Statement is false and misleading.

28. The preceding paragraphs state a direct claim for relief against Bed Bath & Beyond under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

29. As a result of these actions, plaintiff will be injured, and she has no adequate

8

remedy at law. She will suffer irreparable harm on Proposal 5 if no action is taken to ameliorate this harm because, in addition to being forced to vote without this information, the Plan allows for 15,205,511 shares to be granted to an unknown number of "employees and non-employee directors" of Bed Bath & Beyond or its "affiliates" immediately after this vote and then immediately vest. Unwinding these awards will be impossible.

30. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by Item 10(a)(1) of Schedule 14A with regard to Proposal 5.

31. Consequently, Bed Bath & Beyond should be enjoined from presenting Proposal 5 for a stockholder vote at the June 29, 2017 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Bed Bath & Beyond shareholder in connection with Proposal 5 in the 2017 Proxy Statement.

### RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests the following relief:

A. A preliminary and permanent injunction, enjoining Bed Bath & Beyond from:

(i) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Bed Bath & Beyond shareholder in connection with Proposal 5 in the 2017 Proxy Statement;

(ii) presenting Proposal 5 for a shareholder vote at the June 29, 2017 annual meeting;

B. A preliminary and permanent injunction requiring Bed Bath & Beyond to furnish a supplemental proxy statement with the information required by 17 C.F.R. §240.14a-101, Item 10(a)(1) and cured of material disclosure defects pursuant to 15 U.S.C. § 78n(a).

C.      Awarding such other and further relief as this Court deems just and proper.

Dated: June 16, 2017

**WOLF HALEDNSTEIN ADLER FREEMAN & HERZ LLP**

By: /s/  Gloria Kui Melwani
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Attorneys for Plaintiff*